IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LEE ANTHONY BRANCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 1:23-cv-99-ECM |
| ) | [WO] |
| ENCORE, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

On February 17, 2023, Plaintiff Lee Anthony Branch ("Branch") filed this action against Rodney Herring ("Herring") and Encore, LLC ("Encore"). (*See* doc. 1). Later, Branch amended his complaint, adding Defendant Apex Concrete Plumbing, LLC ("APEX"), which he alleges is a successor entity to Encore. (*See* doc. 11 at 2–3).[1] Branch brings five claims: (1) racial discrimination pursuant to 42 U.S.C. § 1981 against Encore and APEX (Count I); (2) Fair Labor Standards Act ("FLSA") violations against Encore and APEX (Count II); (3) assault against Herring (Count III); (4) outrage against all Defendants (Count IV); and (5) infliction of emotional distress against Herring (Count V).[2] (*Id.* at 6–

---

[1] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

[2] Branch also brings a sixth claim for "vicarious liability" against APEX and Encore for Herring's torts under Alabama law. (Doc. 11 at 11). But "Alabama law does not recognize a stand-alone cause of action for [vicarious liability of an employer]." *Batton v. Oak Inv. Grp. Corp.*, 591 F. Supp. 3d 1076, 1087 (N.D. Ala. 2022). Therefore, APEX is entitled to summary judgment on Count VI, but Branch may argue the theory of vicarious liability for Encore—but not APEX—for the reasons stated in this Opinion. *See id.*

11).  Now pending before the Court are APEX's (doc. 68) and Herring's (doc. 73)[3] motions for summary judgment.  The motions are fully briefed and ripe for review.  After reviewing the parties' submissions, the Court finds APEX's motion for summary judgment is due to be GRANTED in part and DENIED in part and Herring's motion for summary judgment is due to be DENIED.

## II.  JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the claims in this matter pursuant to 28 U.S.C. §§ 1331 and 1367.  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).  "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (citation omitted).  However, "conclusory allegations without specific supporting facts have no probative value."

---

[3] In Herring's motion for summary judgment, he incorporates APEX's argument. (*See* doc. 73 at 1).  In its motion, APEX makes one argument:  it is a separate entity from Encore.  Whether APEX and Encore are separate entities has no effect on Herring's liability for any of Branch's claims.  Thus, Herring's motion is due to be denied as he fails to articulate any reason that would warrant granting summary judgment in his favor.

2

*Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citation omitted).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact.  *Hornsby-Culpepper*, 906 F.3d at 1311 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition.  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c).  The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case."  *Hornsby-Culpepper*, 906 F.3d at 1311.  The burden then shifts to the non-moving party "to establish, by going beyond the pleadings, that a genuine issue of material fact exists."  *Id.* at 1311–12.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Non-movants must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1252.  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Id.*  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

## IV.  FACTS

In its motion for summary judgment, APEX makes a single argument—it cannot be held liable as a successor entity to Encore because APEX is separate and distinct.  Focusing on APEX's liability as a successor, the Court only recounts the facts relevant to this discrete issue.

**A.  Encore**

In 2010, Herring founded Encore as a limited liability company ("LLC") and served as its sole member and registered agent.[4] (Doc. 78-1 at 2).  Encore is a concrete pumping company, which means it "place[s] concrete [in locations] a truck cannot" access like a second floor or a fenced-in backyard. (Doc. 69-2 at 3, 22–23).  Around 2012, Herring hired David Sizemore ("Sizemore") as a laborer. (Doc. 69-3 at 4).  Before long, Sizemore became an operator and then a supervisor. (*Id.* at 4–5).

Throughout his ownership of Encore, Herring battled alcohol addiction, which resulted in several arrests, periods of incarceration, and time in rehabilitative facilities,

---

[4] Although Alabama Secretary of State records indicate that Encore was formed in 2010, Herring testified that he started Encore in 2012 or 2013 but was unsure if he "recall[ed] correctly." (Doc. 69-2 at 19).

4

separating him from Encore's daily operations. (*Id.* at 16). In Herring's absence, Sizemore would "r[u]n the company." (*Id.*). In the months leading up to and following November 10, 2022,[5] Herring spent most of his time at his lake house, leaving Sizemore to run Encore. (Doc. 69-3 at 12–13). During this time in 2022, Christian Herring ("Christian"), Herring's then- (now ex-) wife assisted Sizemore with Encore's daily operations, specifically the finances. (*Id.* at 13). Sizemore and Christian operated Encore through March 2023 when they left to form APEX. (*Id.* at 13, 18). By March 2023, Encore operated out of a building on Coe Dairy Road in Dothan, Alabama (doc. 69-2 at 24), rented three "boom trucks" and "four line pumps" (doc. 75-2 at 10), and had four primary employees—Chris Lewis ("Lewis"), Brad Ellett ("Ellett"), Christian, and Sizemore (*id.* at 3). Around this time, while Herring was in the hospital, he signed a power of attorney to Christian to allow her to "take care of any of the needs for the business or [their] personal matters," but he could not remember the exact scope of the power of attorney, including whether Christian could sell Encore.[6] (Doc. 75-3 at 5).

**B.  APEX**

Given Herring's volatility, Sizemore decided to start his own concrete pumping company, APEX, with four members: Christian, Ellett, Lewis, and Sizemore. (Doc. 69-3 at 20). In his deposition, Sizemore testified that he began forming APEX in the summer

---

[5] On November 10, 2022, an intoxicated Herring came into the office, called a meeting, berated Branch, and waved a firearm at his employees. (*See* doc. 75-5 at 13; doc. 69-3 at 22–23). The events of that day serve as part of the grounds for this lawsuit.

[6] Herring's power of attorney is not part of the record.

5

of 2022 by "put[ting] things in motion" to start the new company and contacting potential customers.[7] (Doc. 69-3 at 19). On March 10, 2023, Christian formed APEX by filing the appropriate paperwork with the Alabama Secretary of State. (Doc. 75-1 at 7). Christian initially served as APEX's registered agent. (*Id.* at 6). From its inception in March 2023 until October 2023, APEX operated from the same building as Encore. (Doc. 75-2 at 8). APEX paid rent to Christian who either purchased or was in the process of purchasing the building on Coe Dairy Road. (*Id.*). Additionally, APEX "[took] over the leases" of some of Encore's equipment because Encore was "behind in payments." (*Id.* at 10). Sizemore described these equipment leases as "new." (*Id.*). But other equipment not taken over by APEX remained at the Coe Dairy Road location and was eventually repossessed. (*Id.* at 13). APEX used at least one former Encore truck and operated it with Encore's United States Department of Transportation ("USDOT") number displayed on the door (*see* doc. 75-7 at 1; doc. 75-4 at 1). Later, APEX secured its own USDOT number. (Doc. 78-2 at 2).

Herring claims that neither he nor Encore ever leased anything to APEX or received any funds from APEX. (Doc. 69-2 at 30). According to Alabama Secretary of State and USDOT records, Encore remains an active entity (*see* doc. 75-7; doc. 78-1), and Herring testified that he has not shut down Encore, is unaware of anyone shutting down Encore, would resume the operation of Encore upon his discharge, and believed he was still the sole member of the LLC (doc. 69-2 at 31–32). APEX began operations immediately after

---

[7] The record includes Branch's declaration which states that while he was employed by Encore from 2019 through November 10, 2022, he never heard Sizemore or any other employee at Encore discuss starting a new concrete pumping company. (Doc. 75-6 at 1).

6

its owners left Encore with "no time delays" between leaving their previous employment and starting the new business. (Doc. 69-3 at 18). But APEX did not inherit any of Encore's contracts and only used "new contracts [that it secured] beforehand." (*Id.*).

In his response to APEX's motion for summary judgment, Branch claims APEX's members received notice of this suit on February 21, 2023,[8] and created the new LLC seventeen days later. (*See* doc. 75 at 20). In support, he cites docket entry five. (*Id.*). But docket entry five shows February 21, 2023, was the date the Clerk's Office *issued* summons—not the day any party was *served*. (*See* doc. 5).[9] No deposition testimony, declaration, or affidavit identified by the parties establishes when APEX or its members had notice of the lawsuit.

## V. DISCUSSION

APEX, and by adoption, Herring, move for summary judgment on a single ground: APEX is a separate legal entity from Encore. Thus, according to APEX, it cannot be liable for Encore's and Herring's actions. Because APEX only argues it is a separate entity and not liable for Herring's actions (not the merits of Branch's claims), APEX's argument does not support granting summary judgment in Herring's favor, so his motion is due to be denied.

---

[8] Branch filed this lawsuit on February 17, 2023. (Doc. 1).

[9] To clarify the record, the Court notes that on May 19, 2023, Branch moved for an extension of time to complete service in which he claimed service had not been perfected because Herring was incarcerated and Christian called counsel on May 11, 2023, to report "that . . . a new company had been formed" and "Herring was not a part of [APEX]." (Doc. 7 at 1–2). In September 2023, Branch's story slightly changed. He stated that Christian called "counsel for [Branch] in March 2023 to state that they had knowledge of the lawsuit and that [ ] Herring was currently incarcerated and that she and other employees were taking over the business under a new name." (Doc. 19 at 2). No deposition testimony, declaration, or affidavit regarding Christian's interactions with Branch's counsel is part of the evidence presented on summary judgment.

As applied to APEX, its argument that it is a separate entity from Encore and not liable for Encore's actions as a successor entity warrants further discussion. In their briefing, both parties fail to recognize that different law governs Branch's claims. For the employment claims under federal law, federal successor law applies. For the state tort claims, state law applies. At this stage of the litigation with the record presented, the Court finds APEX's motion for summary judgment on the federal law claims (Counts I and II) is due to be denied but is due to be granted for the state law claims (Counts III, IV, and V).

**A.    Federal Law Claims**

The federal-common-law standard of successor liability applies in federal labor law cases. *See In re Nat'l Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir. 1983) (per curiam) ("We agree that the balancing of interests, fact specific analysis employed by the Supreme Court in labor law successor cases is the proper method for determining whether a successor employer should be bound by the Title VII transgressions charged against it predecessor."); *Hatfield v. A+ Nursetemps, Inc.*, 651 F. App'x 901, 906 (11th Cir. 2016) [10] ("[T]his court's precedent supports . . . 'having a distinct federal standard applicable to federal labor and employment statutes . . . [which is] necessary to achieve the statutory goals [of federal labor and employment laws] . . . .'" (quoting *Teed v. Thomas & Betts Power Sols., L.L.C.*,

---

[10] The Court recognizes that *In re National Airlines* is in the Title VII context and *Hatfield* is an unpublished Eleventh Circuit opinion, which is not binding on this Court. However, the reasoning of these opinions is persuasive and applies to both 42 U.S.C. § 1981 and the FLSA (federal employment laws). *See generally Hatfield*, 651 F. App'x at 906 ("In other words, 'successor liability is appropriate in suits to enforce federal labor or employment laws' to prohibit employers who violated [these] laws from avoiding liability by selling, or otherwise disposing of, their assets and dissolving, and the acquirer likewise does not assume liability in its purchase." (quoting *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 766–67 (7th Cir. 2013)); *Brown v. S. Senior Assocs.*, 2025 WL 1568225, at *6 (M.D. Ga. June 3, 2025) (applying federal-common-law standard for successor liability to a claim brought under 42 U.S.C. § 1981).

711 F.3d 763, 766 (7th Cir. 2013)).[11] This inquiry "is a highly fact oriented task." *In re National Airlines, Inc.*, 700 F.2d at 699.

In *Evans Services, Inc. v. N.L.R.B.*, the Eleventh Circuit articulated a two-step inquiry that would require the Court to find that: (1) "the new business retains common aspects of the prior business sufficient to allow the legal conclusion of 'successorship'" and (2) "the successor knew of the unfair labor practices at the time it purchased the business." 810 F.2d 1089, 1092 (11th Cir. 1987). But in an unpublished opinion in an FLSA case, the Eleventh Circuit adopted five factors from the Seventh Circuit and "consider[ed] whether: (1) 'the successor had notice of the pending' action; (2) 'the predecessor . . . would have been able to provide the relief sought in the [action] before the sale'; (3) 'the predecessor could have provided the relief after the sale' (its 'inability to provide relief favors successor liability'); (4) 'the successor can provide the relief sought in the [action]'; and (5) 'there is continuity between the operations and work force of the predecessor and the successor.'" *Hartfield*, 651 F. App'x at 907 (alterations in original) (quoting *Teed*, 711 F.3d at 765–66). The Court does not resolve which specific standard applies in this case because no party references the federal-common-law standard or either test—let alone, applies them.[12] (*See* docs. 69, 73, 75, 78).

---

[11] Here, and elsewhere in this Memorandum Opinion, the Court cites nonbinding authority. While the Court recognizes that these cases are nonprecedential, the Court finds them persuasive.

[12] Even though the Court declines to undertake the analysis unaided by the parties, it doubts that APEX's motion would be granted under this standard because of the fact-intensive nature of the inquiry and the overlap between APEX and Encore.

At this stage, APEX fails to carry its initial burden to demonstrate why its motion should be granted. Because APEX failed to apply the governing law, it did not "demonstrate the basis for its motion" or "identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact'" under the proper standard. *Hornsby-Culpepper*, 906 F.3d at 1311 (quoting *Celotex*, 477 U.S. at 323)). Thus, APEX's motion for summary judgment on the federal law claims (Counts I and II) is due to be denied.

**B.     State Law Claims**

Unlike the federal law claims, the Court finds—and the parties agree—that Alabama corporate law governs whether APEX assumed Encore's liabilities for Alabama torts. *Cf. Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1457 (11th Cir. 1985) (applying Georgia successor liability law in a breach of contract case). Under Alabama law,

> [a]s a general rule, where one company sells or otherwise transfers all its assets to another company, the transferee is not liable for the debts and liabilities of the transferor unless (1) there is an express agreement to assume the obligations of the transferor, (2) the transaction amounts to a *de facto* merger or consolidation of the two companies, (3) the transaction is a fraudulent attempt to escape liability, or (4) the transferee corporation is a mere continuation of the transferor.

*Prattville Mem'l Chapel v. Parker*, 10 So. 3d 546, 555 (Ala. 2008) (citations omitted). APEX claims the Court need not even reach this analysis because the record evidence establishes that there never was a sale or transfer of Encore's assets to APEX. According to APEX, it is simply a new company started by Encore's former employees who never had an ownership interest in their previous employer. Branch argues the retention of

10

employees, use of the same equipment and location, the same USDOT number, Christian's power of attorney, notice of the lawsuit, and the proximity between APEX's creation and the lawsuit all show APEX is Encore's successor.

The Court agrees with APEX that it is not Encore's successor under Alabama law because APEX never transferred any assets to Encore or Herring and has different members than Encore (no continuation of ownership interest). Branch does not cite sufficient (or any) case law that suggests *employees* of a company who start their own separate company as *owners* should be liable for the actions taken by their previous employer. *Cf. Matrix-Churchill v. Springsteen*, 461 So. 2d 782, 787–88 (Ala. 1984) (holding a successor corporation was not liable when there was overlap of employees and facilities but separation of ownership between successor and purchaser); *Bud Antle*, 758 F.2d at 1457 (applying the same four exceptions of successor liability under Georgia law and noting that "[a]ll four . . . exceptions [to apply successor liability] require a transfer of assets in order to hold the acquiring [LLC] liable."). The Court will not opine on the effects of Christian's power of attorney, which is construed narrowly under Alabama law, *see Lamb v. Scott*, 643 So. 2d 972, 973 (Ala. 1994), and the other unique characteristics of the case effectively *sua sponte* because it would expand this Court's role in applying Alabama law. "It is not the function of federal courts to expand state [ ] doctrine in novel directions absent state authority suggesting the propriety of doing so." *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1154 (11th Cir. 2011). In fact, the Eleventh Circuit has warned that "considerations of comity and federalism counsel that [federal courts] proceed gingerly

when venturing into uncharted waters of state substantive law." *Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1251 (11th Cir. 2013).

On this record, the Court will not extend an already limited exception under Alabama law to a new context. *Cf. Prattville Mem'l*, 10 So. 3d at 555 ("As a general rule, where one company sells or otherwise transfers all its assets to another company, the transferee is not liable for the debts and liabilities of the transferor . . . ." (citation omitted)). APEX put forward deposition testimony and other evidence that established it: (1) never purchased any assets from Encore, (2) never received any assets from Encore, and (3) had no continuation of ownership between the two LLCs. Although Branch points to evidence showing overlap between APEX and Encore's operations, he fails to demonstrate why those pieces of evidence matter under Alabama law. Simply, he cited a rule without sufficient analysis to support his argument. Such a showing is insufficient to carry his burden at this stage. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116–17 (11th Cir. 1993).

## VI. CONCLUSION

Therefore, for the reasons stated, and for good cause, it is

ORDERED that Apex's motion for summary judgment (doc. 68) is GRANTED for Counts III, IV, V, and VI but DENIED for Counts I and II. It is further

ORDERED that Herring's motion for summary judgment (doc. 73) is DENIED.

DONE this 15th day of July, 2025.

                                      /s/ Emily C. Marks
                                   EMILY C. MARKS
                                   CHIEF UNITED STATES DISTRICT JUDGE