IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

LEE ANTHONY BRANCH,          )
                             )
    Plaintiff,                )
                             )
v.                           )          CIVIL CASE NO. 1:23-cv-99-ECM
                             )                    [WO]
RODNEY HERRING,              )
                             )
    Defendant.                )

**MEMORANDUM OPINION and ORDER**

Plaintiff, Lee Anthony Branch, moves for default judgment against Defendant, Rodney Herring. (Doc. 146).  Upon consideration, his motion is due to be granted in part and denied in part.

## I.  BACKGROUND

Branch alleges that on November 10, 2022, he was "verbally abus[ed] and threatened" by Herring, who was Branch's employer. (Doc. 11 at 2–3, paras. 5, 8, 11). Herring allegedly "insulted . . . [Branch] with racist remarks" "while grabbing what is believed to be an AR 15 style assault weapon." (*Id.* at 3–4, para. 11).  Branch responded with this action, asserting a panoply of claims against Herring and the two entities Branch claimed to work for, Encore, LLC and Apex Concrete Pumping, LLC. (*See id. passim*). Since then, he has settled with Apex, (doc. 128), and voluntarily dismissed his claims against Encore, (docs. 153, 156).  Accordingly, Herring is the sole remaining Defendant. against whom Branch asserts claims of assault (Count Three), Outrage (Count Four), and

intentional infliction of emotional distress (Count Five).[1] (*See* doc. 11 at 9–11, paras. 40–49).

Herring filed a pro se answer in response to the amended complaint generally denying Branch's allegations against him. (Doc. 36).  Since then, he has only participated sporadically, acknowledging receipt of certain orders, (docs. 49, 50, 63, 99, 123), and appearing for mediation with the Magistrate Judge, (doc. 83).  He also filed a motion for summary judgment on behalf of himself and Encore. (Doc. 73).[2]  However, he failed to appear at the final pretrial conference, (doc. 93), and at two subsequent status conferences, (docs. 119, 131).  Consequently, Branch renewed his application for a Clerk's default as to Herring for failure to "otherwise defend," (doc. 136 at 1 (quoting FED. R. CIV. P. 55(a))), which the Clerk granted, (doc. 137).  Branch now moves for default judgment against Herring. (Doc. 146).

## II.  LEGAL STANDARD

A default judgment may be entered when a defendant "has failed to plead or otherwise defend." FED. R. CIV. P. 55(a).  While the Eleventh Circuit has a "strong policy of determining cases on their merits" and "therefore view[s] defaults with disfavor," *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003), it is well-settled that a

---

[1] While Count Five is simply styled "Infliction of Emotional Distress," it is clear from the allegations in that count, (doc. 11 at 10–11, paras. 45–49), and from Branch's most recent motion for default judgment, (doc. 146 at 12–14), that he is asserting an intentional, not negligent, infliction of emotional distress claim. *See Reserve Nat'l Ins. Co. v. Crowell*, 614 So. 2d 1005, 1011 (Ala. 1993) (noting that negligent and intentional infliction of emotional distress are distinct claims).

[2]  That motion was summarily denied as to Encore because Herring, as a pro se litigant, could not represent it, (doc. 74; *see* doc. 102 at 1 n.1), and as to Herring because "he fail[ed] to articulate any reason that would warrant granting summary judgment in his favor," (doc. 87 at 2 n.3).

"district court has the authority to enter default judgment for failure . . . to comply with its orders or rules of procedure," *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

"When a defendant defaults, he admits the plaintiff's well-plead[] allegations of fact." *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015) (quotation omitted). Therefore, "[t]he allegations must be well-plead[] in order to provide a sufficient basis for the judgment entered." *De Lotta v. Dezenzo's Italian Rest., Inc.*, 2009 WL 4349806, at *1 (M.D. Fla. 2009)[3] (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)).  A complaint is well-plead when it satisfies the requirements set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Specifically, "the factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

Even though a plaintiff may satisfy the pleading requirements, "the Court [still must] determine[] the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).  Though the court is not required to hold a hearing before entering an award for damages after granting a default judgment, *see Giovanno*, 804 F.3d at 1366 ("Given its permissive language, Rule 55(b)(2) does not require a damages hearing in every case."), "[d]amages may be awarded without an evidentiary hearing 'only if the record adequately reflects the basis for [the] award via a demonstration by detailed affidavits establishing the necessary facts.'" *Robbie's of Key West v. M/V Komedy III*, 470 F. Supp. 3d 1264, 1268 (S.D. Fla. 2020) (alteration adopted)

---

[3] Here and elsewhere the Court cites nonbinding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

(quoting *Adolph Coors Co. v. Movement Against Racism & Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)); *Sec. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("We have held that no such hearing is required where all essential evidence is already of record.").

### III.  DISCUSSION

Branch seeks a default judgment against Herring for assault, outrage, and intentional infliction of emotional distress. (Doc. 146 at 10).  The Court concludes that Branch is entitled to default judgment on his assault claim, but that a hearing is required to determine the appropriate award of damages.

### A.    Assault (Count Three)

Alabama defines assault as "an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well[-]founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." *Wright v. Wright*, 654 So. 2d 542, 544 (Ala. 1995) (quoting *Allen v. Walker*, 569 So. 2d 350, 351 (Ala. 1990)). Branch alleges that, during a company meeting, "Herring became verbally abusive and threatened [Branch] with physical harm while grabbing what is believed to be an AR 15 style assault weapon." (Doc. 11 at 3–4, para. 11).  Another employee intervened, wresting the rifle from Herring, "who then pulled [a] knife out while threatening" Branch. (*Id.*). Accordingly, Branch alleges that Herring "intended to cause and/or place [him] in apprehension of harmful and offensive contacts with his person when [Herring] grabbed the AR 15 assault weapon and knife and threatened [Branch]'s life." (*Id.* at 9, para. 40).

4

Accepting these allegations as true, the amended complaint plausibly states an assault claim—Herring's brandishing multiple weapons while slinging insults and threats at Branch easily satisfies the elements. *See Wright*, 654 So. 2d at 544; *see also Brassfield v. Jack McLendon Furniture, Inc.*, 953 F. Supp. 1438, 1459 (M.D. Ala. 1996) (denying the defendant's motion for summary judgment on an assault claim where the defendant "threatened [the plaintiff] with physical violence" by "clenching his fist while telling [the plaintiff] that he was going to knock her teeth down her throat").  Accordingly, Herring's motion for default judgment as to Count Three is due to be granted.

**B.    Outrage (Count Four) and Intentional Infliction of Emotional Distress (Count Five)**

Under Alabama law, outrage and intentional infliction of emotional distress are one and the same. *Wilson v. Univ. of Ala. Health Servs. Found., P.C.*, 266 So. 3d 674, 675 n.1 (Ala. 2017).  To recover, the plaintiff must show that the defendant's conduct (1) "was intentional or reckless," (2) "was extreme and outrageous," and (3) "caused emotional distress so severe that no reasonable person could be expected to endure it." *Id.* at 676. "The conduct complained of must 'be so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society.'" *Id.* at 676–77 (quoting *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990)).

The Alabama Supreme Court has emphasized time and again that "the tort of outrage is an *extremely limited cause of action* and will lie in circumstances demonstrating only *the most egregious conduct*." *21st Mortg. Corp. v. Robinson*, 429 So. 3d 381, 392

(Ala. 2024) (emphases in original). "It is so limited that th[e Alabama Supreme] Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." *Potts v. Hayes*, 771 So. 2d 462, 465 (2000) (internal citations omitted); *accord Callens v. Jefferson Cnty. Nursing Home*, 769 So. 2d 273, 281 (Ala. 2000). While the outer bounds of the tort may extend a bit beyond these three discrete circumstances, it doesn't extend very far, and any extension would appear appropriate only in the presence of truly monstrous facts. For instance, the Alabama Supreme Court affirmed "a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction." *Little v. Robinson*, 72 So. 3d 1168, 1172–73 (Ala. 2011) (citing *O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011)); *see also Livingston v. Marion Bank & Tr. Co.*, 30 F. Supp. 3d 1285, 1324 (N.D. Ala. 2014) (permitting the plaintiff's outrage claim to go to a jury where the record demonstrated that the plaintiff was subjected to "egregious sexual harassment," including one antagonist who, after learning that the plaintiff "had been raped at knife point," "us[ed] his power as [the defendant]'s highest-ranking employee to coerce [the plaintiff] into answering questions seeking all of the intimate details of how she was raped, including what sexual position she was in, what clothing she was wearing, where her attacker held the knife, and what she was thinking during the episode").

Branch does not wrestle with the exceedingly narrow scope of this cause of action or provide analysis explaining why Herring's conduct is sufficiently outrageous. Instead, he cursorily asserts that Herring's conduct satisfies the test. (*See* doc. 146 at 13 ("Herring's conduct being in a drug/alcohol induced rage and angrily berating Mr. Branch with racial epithets and violently threatening Mr. Branch with an assault rifle constitute behavior so extreme and outrageous in character as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society.")). None of the cases he cites to support this proposition are properly analyzed, or even on point. *See Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 364–68 (Ala. 1980) (recognizing the tort of outrage but concluding that evidence the plaintiff "had been harassed, investigated without cause, humiliated, accused of improper dealings, treated uncustomarily, and terminated without justification" was insufficient to support an outrage claim); *Ex parte Mut. Sav. Life Ins. Co.*, 698 So. 2d 772, 773–75 (Ala. 1997) (no outrage claim where the plaintiff alleged that the defendant unreasonably delayed the cancelation of her life insurance policy despite knowledge that a related insured had been murdered apparently for the insurance proceeds); *Hurst v. Cook*, 981 So. 2d 1143, 1156–58 (Ala. 2007) (affirming summary judgment denying outrage claims predicated on (1) malicious submission of a false police report, (2) harassment, and (3) burglary); *Little v. Consol. Pub. Co.*, 83 So. 3d 517, 526 (Ala. Civ. App. 2011) ("We need not decide [whether the defendant's alleged conduct was sufficiently outrageous] . . . because [the plaintiff] has not presented substantial evidence to support his theory."); *Peterson v. BMI Refractories*, 132 F.3d 1405, 1412–13 (11th Cir. 1998) (deciding only that the defendant's alleged conduct was outrageous such that the

plaintiff's outrage claim was not preempted by the parties' collective bargaining agreement).

In the absence of a compelling argument from Branch, the Court will not extend a state law claim that the Alabama Supreme Court has repeatedly emphasized is "extremely limited." *Potts*, 771 So. 2d at 465. The Court concludes that Branch has failed to state a claim of outrage, and so his motion is due to be denied as to Counts Four and Five.

## C. Damages

Branch seeks punitive and compensatory damages as well as attorney fees and costs. (Doc. 11 at 12). In his motion, he requests $100,000 to compensate him for his distress, $20,000 in attorney fees, and unspecified punitive damages and other costs—though, confusingly, Branch also states that he is seeking $120,000 total. (Doc. 146 at 15). While Branch argues that "a hearing on damages is not necessary since there is already essential evidence in the record[] reflecting the basis for the award," (*id.* at 14), he does not cite this evidence. It's true that, generally speaking, "compensatory damages . . . need not be proved with a high degree of specificity and may be inferred from the circumstances," *Bogle v. McClure*, 332 F.3d 1347, 1359 (11th Cir. 2003), but Branch has not furnished the Court *any* basis from which to evaluate his requested damages, *see Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters[] . . . ."), and courts properly deny damages "that are uncertain or speculative," *Natures Way Marine, LLC v. N. Am. Materials, Inc.*, 2008 WL 1776946, at *1 (S.D. Ala. 2008). "Rather than merely *telling* the Court in summary fashion what [his] damages are, a plaintiff seeking default judgment

8

must *show* the Court what those damages are, how they are calculated, and where they come from[] . . . ." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010).  Until Branch does that, the Court cannot award him anything.

Because Branch is seeking to recover for psychological and emotional distress, the undersigned believes that a hearing on damages would be beneficial.  The Court will also order Branch to file a supplemental brief exclusively addressing the issue of damages.  That brief must explain *why* Branch requests what he does, rather than simply tell the Court *what* his requests are.  The supplemental brief shall take care to distinguish between the types of relief sought (with citations to the law, showing that the requests are permitted) and to adequately address the amount sought (with citations to the record, showing that the requests are proper).[4]  Branch and his attorney shall be prepared to discuss all aspects of the recovery sought at the hearing.

### IV.  CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED as follows:

1.      Plaintiff's motion for default judgment (doc. 146) is GRANTED in part and DENIED in part.  The motion is GRANTED as to the liability of Defendant on Plaintiff's assault claim.  It is otherwise DENIED.

---

[4] At this juncture, the Court discerns no basis for awarding attorney fees to Branch for his assault claim. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001) ("In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser.").  Branch has made no effort to show that this general rule would not apply here, and the Court will not award him attorney fees unless and until he does.

2.      Plaintiff shall file supplemental briefing on or before **July 31, 2026,** addressing (1) the amount of damages, attorney fees, expenses, and costs sought; (2) calculations for those sums; (3) affidavits or other evidence to support the calculations and amounts sought; and (4) authority for the Court to award the damages, fees, expenses, and costs sought.

3.      An evidentiary hearing on damages is SET for **August 6, 2026,** in Courtroom 2A, the Frank M. Johnson, Jr. U.S. Courthouse, Montgomery, Alabama at **1:30 p.m.** Plaintiff shall be prepared to discuss all aspects of the recovery sought at the hearing.

DONE this 21st day of July, 2026.

/s/ Emily C. Marks
EMILY C. MARKS
UNITED STATES DISTRICT JUDGE