IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LEE ANTHONY BRANCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:23-cv-99-ECM |
| | ) | [WO] |
| RODNEY HERRING, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

On July 21, 2026, the Court granted Plaintiff Lee Anthony Branch's ("Branch") motion for default judgment as to Defendant Rodney Herring's ("Herring") liability on Branch's state law assault claim. (Doc. 157). The Court subsequently held a damages hearing and ordered Branch to file supplemental briefing on the issue of damages. (Docs. 158, 159). Branch seeks $131,000 in compensatory damages, an unspecified amount in punitive damages, and $2,550.27 in other court costs. (Doc. 158 at 9). After careful consideration, and for the following reasons, the Court concludes that Branch is entitled to compensatory damages, punitive damages, and other court costs as set out below.

**I. BACKGROUND**

The Court provided a thorough recitation of the facts and procedural history of this case in its July 21, 2026 Order, (doc. 157 at 1–2), so a full background is not necessary here. To summarize, Branch—Herring's former employee at Encore, LLC ("Encore")—alleged that at a meeting in November 2022, Herring "insulted . . . [Branch] with racist remarks while grabbing an AR-15 style semi-automatic rifle." (Doc. 11 at 2–3, paras. 5, 8, 11). Another

employee intervened, wresting the rifle from Herring, "who then pulled [a] knife out while threatening" Branch. (*Id.* at 3–4, para. 11). Thus, the Court found that Branch's allegations, accepted as true, were sufficient to establish Herring's liability for assault. (Doc. 157 at 5 ("Herring's brandishing multiple weapons while slinging insults and threats at Branch easily satisfies the elements [of assault]."))

## II. DAMAGES

Branch contends that he is entitled to two kinds of damages: compensatory and punitive. (Doc. 158 at 10). The Court discusses each in turn below.

### A. Compensatory Damages

Branch seeks compensatory damages in the amount of $131,000, representing $31,000 in lost wages and $100,000 in mental anguish. (Doc. 158). "A federal court reviewing a compensatory award on a state law claim must evaluate the propriety of the award under state law." *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1212 (11th Cir. 2010). Under Alabama law, compensatory damages "make the [injured party] whole by reimbursing him or her for the loss or harm suffered." *Ex parte S&M, LLC*, 120 So. 3d 509, 516 (Ala. 2012).

#### 1. Lost Wages

Branch estimates that Herring's assault caused $31,000 in lost income. (Doc. 158 at 6 n.1, 10). Consistent with his deposition testimony, Branch testified at the damages hearing that his annual pay at Encore was between $28,000 and $31,000. (Doc. 158-3 at 2:1–5 (deposition transcript)). Branch further testified that after the assault, he "didn't work for a whole year" and that his "mental status at that time was not well." (Doc. 158-1 at 2:8–23; 3:1–3). Branch testified that he applied to other jobs during the year he did not work, but that he

"never heard anything back from th[o]se jobs." (*Id.* at 2:6–16); *see Avco Fin. Servs., Inc. v. Ramsey*, 631 So. 2d 940, 942 (Ala. 1994) ("[T]he law imposes upon all parties who seek recompense from another a duty to mitigate their losses or damages.").

Considering Branch's testimony, which the Court credits, the Court concludes that $31,000 is a reasonable estimate for Branch's lost income during the twelve months following the assault, as it will "reimburs[e] him . . . for the loss or harm suffered." *S&M*, 120 So. 3d at 516.

**2. Mental Anguish**

Branch also seeks $100,000 for his mental anguish, arguing that this sum would adequately compensate him for the terror he suffered. (Doc. 158 at 7). Mental anguish "includes the mental suffering resulting from the excitation of the more poignant and painful emotions, such as grief, severe disappointment, indignation, wounded pride, shame, etc." *Wal-Mart Stores, Inc. v. Thompson*, 726 So. 2d 651, 655 (Ala. 1998) (quoting *Volkswagen of Am., Inc. v. Dillard*, 579 So. 2d 1301, 1306 (Ala. 1991)). Indeed, mental suffering can be inferred in circumstances akin to the instant case. *See John R. Thompson & Co. v. Vildibill*, 100 So. 139, 141 (Ala. 1924) ("Physical pain, mental suffering, or mental anguish, or all three, may be inferred by the jury to exist to some extent from proof of fright caused by a sudden, unprovocated, unjustifiable assault with a pistol, accompanied with insulting language.").

Here, Branch argues that $100,000 would adequately redress the terror suffered during his "experience of being threatened at gunpoint and knifepoint, combined with racial abuse," (doc. 158 at 7), as well as the significant duration of his suffering because of this incident,

(*id.*). Thus, Branch submits that $274 per day for 365 days—or roughly $100,000—would adequately compensate him for his mental anguish resulting from the assault. (*Id.*).

Branch undoubtedly experienced mental anguish: he testified credibly at the damages hearing that his personal relationships with his girlfriend and his grandchildren deteriorated because of his distress. (Doc. 164 at 9). He ultimately sought counseling from his pastor. (Doc. 164 at 9–10). The video recording of the incident supports Branch's testimony that Herring had a pocketknife and briefly grabbed a nearby gun. (Doc. 75-9). However, the video does not support Branch's testimony that he was "trapped in a corner," (doc. 164 at 6), nor his assertion that Herring "threatened" Branch "at gunpoint and knifepoint," (doc. 158 at 7). Indeed, Herring never pointed the gun directly at Branch. (Doc. 75-9). Nevertheless, Herring frightened Branch, and Herring's threats combined with racial epithets are likely to cause some degree of mental anguish to their target. *See John R. Thompson & Co.*, 100 So. at 141 (holding that mental anguish may be inferred in the victim of an assault with a firearm accompanied by insulting language). Branch has shown that these circumstances caused him mental anguish.

Upon consideration of all evidence, the Court finds that Branch is entitled to $9,125—or $25 per day for the twelve months following the assault—to compensate Branch for his mental anguish.

**B. Punitive Damages**

Branch also requests an unspecified amount of punitive damages to punish Herring for his assault. Punitive damages "are aimed at deterrence and retribution." *State Farm*, 538 U.S. at 416 (2003). Under Alabama law, punitive damages are capped at the greater of $500,000

or three times the amount of compensatory damages. ALA. CODE § 6-11-21(a). Moreover, "punitive damages may not be awarded in any civil action . . . other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." *Id.* § 6-11-20(a). The Alabama Supreme Court upheld punitive damages against a defendant who "pointed a loaded shotgun at the plaintiff and said, 'You sorry son-of-a-b[----], I'll kill you right now.'" *Delchamps, Inc. v. Morgan*, 601 So. 2d 442, 444 (Ala. 1992) (quoting *Harrison*, 391 So. 2d at 1040).

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996); *see also Williams v. First Advantage LNS Screening Sols., Inc.*, 947 F.3d 735, 749 (11th Cir. 2020). When considering the reprehensibility of the defendant's conducts, courts consider the following factors:

> (1) whether the harm caused was physical, rather than economic; (2) whether the defendant's conduct "evinced an indifference to or a reckless disregard of the health or safety of others"; (3) whether the target of the conduct was financially vulnerable; (4) whether "the conduct involved repeated actions or was an isolated incident"; and (5) whether the harm resulted from "intentional malice, trickery, or deceit, or mere accident."

*Id.* at 749 (quoting *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 429 (2003)). The Court has little difficulty determining that these factors weigh in favor of an award of punitive damages. Herring's conduct "evinced an indifference to" and "a reckless disregard" for Branch. And Branch, as Herring's employee, was financially vulnerable and dependent on his employment. Further, it is clear that Herring's conduct was intentional and designated to denigrate, diminish, and offend Branch—beyond Herring's physical threats, he used

insulting language and racial epithets which have no place in civilized society. (Doc. 158-2 at 2:14-17 ("[Herring] said, 'I'm not afraid of you and I'm going to show your [sic] black-a-- n-----,' and lunged out of his seat and grabbed the [gun]."')).

In this case, based on the need to punish and deter Herring, the Court concludes that an award of punitive damages is warranted. The Court concludes that an award of punitive damages in the amount of $18,250 is an appropriate award in this case.

## III. OTHER COSTS

Finally, Branch requests an award for the costs of prosecuting this action. Federal Rule of Civil Procedure 54(d)(1) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Branch submitted evidence of his deposition fees and filing fee, totaling $2,550.27. (Doc. 160). Accordingly, the Court concludes that Branch is entitled to the costs of this action, which equate to $2,550.27.

## IV. CONCLUSION

For the reasons stated and upon consideration of the record as a whole, it is

ORDERED as follows:

1. Branch is awarded compensatory damages in the amount of $40,125 on his assault claim.

2. Branch is awarded punitive damages in the amount of $18,250 on his assault claim.

3. Branch is awarded other court costs in the amount of $2,550.27 on his assault claim.

A separate Final Judgment will be entered.

The Clerk of the Court is DIRECTED to mail a copy of this Memorandum Opinion and Order to the address reflected on the docket for Herring.

DONE this 8th day of September 2026.

/s/ Emily C. Marks
EMILY C. MARKS
UNITED STATES DISTRICT JUDGE